UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MEIRER,<br><br>                    Plaintiff,<br><br>          v.<br><br>SCANDINAVIAN AIRLINES SYSTEM, *et al.*,<br><br>                    Defendants. | Case No. 20-cv-05762-JSW<br><br>**ORDER GRANTING MOTIONS TO DISMISS, WITH LEAVE TO AMEND, AND SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 17, 20, 28 |

This matter comes before the Court upon consideration of motions to dismiss filed by Defendants Scandinavian Airlines of North America, Inc. ("SANA"), Scandinavian Airlines System ("SAS"), and MedAire, Inc. ("MedAire"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS SANA's motion, GRANTS SAS's motion, and GRANTS MedAire's motion.

**BACKGROUND**

On March 5, 2019, Plaintiff Michael Meirer ("Meirer") suffered a stroke while on-board SAS flight 936 from San Francisco, California to Copenhagen, Denmark. (Compl. ¶¶ 18-19.) He alleges that the SAS flight crew initially assured him they would conduct an emergency landing in Iceland but later rescinded that decision after receiving advice from MedAire. The flight then continued on to Copenhagen. Meirer alleges that when SAS learned about his stroke, the flight was approximately two hours from the airport in Iceland and was over four hours from landing in Copenhagen. He also alleges that SAS failed to alert authorities in Copenhagen of the medical emergency. Thus, instead of having an ambulance or competent medical assistance available upon landing, he had to travel by taxi to a hospital. (*Id.* ¶¶ 21-23, 31-32, 39-42.) Meirer alleges that the accepted standard for stroke treatment is to provide care within 4.5 hours of "last known normal"

to prevent neurological damage, and he alleges he has suffered permanent neurological damage, including partial blindness. (*Id.* ¶¶ 3, 44-46.) Based on these allegations and his assertion that SAS conducts business in the United States through SANA, Meirer brings claims for common carrier strict liability and negligence against SAS and SANA, and a claim for negligence against MedAire. It is undisputed that SAS is a foreign air carrier licensed by the U.S. Department of Transportation to operate international flights to and from the United States.

The Court shall address additional facts as necessary in the analysis.

## ANALYSIS

SANA moves to dismiss on the basis that: the Court lacks personal jurisdiction over it; Meirer fails to state facts that support a finding of liability against it; and that Meirer's claims are preempted by the Montreal Convention. SAS and MedAire move to dismiss on the basis that the claims are preempted by the Montreal Convention.

**A.     The Court Grants SANA's Motion to Dismiss for Lack of Personal Jurisdiction.**

SANA moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Courts may consider evidence presented in affidavits to assist in that determination and may order discovery on jurisdictional issues. *Data Disc, Inc. v. Systems Technology Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). However, when "a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss . . . That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (where the trial court ruled on jurisdictional issue based on affidavits and without holding an evidentiary hearing, plaintiff need only make a prima facie showing). Where the facts are not directly controverted, plaintiff's version of the facts is taken as true. *See AT&T*, 94 F.3d at 588. Likewise, conflicts between the facts contained in the parties' affidavits must be resolved in a plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction

exists. *Schwarzenegger v. Fred Martin Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"Personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 801.

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) (further holding that the maintenance of an action in the forum must not offend traditional conceptions of fair play and substantial justice). The defendant's "conduct and connection with the forum State" must be such that the defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Whether a party's contacts with the forum are sufficient to permit the state to exercise jurisdiction depends upon the facts of each case. *Thos P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1251 (9th Cir. 1980).

There are two categories of personal jurisdiction: general and specific. When a court evaluates whether it has general jurisdiction over a corporation like SANA, "the place of incorporation and principal place of business are paradigm ... bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal quotations, alterations, and citations omitted); *accord Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (stating "the paradigm forum for the exercise of general jurisdiction … for a corporation [is] in which the corporation is fairly regarded as at home"). SANA was incorporated in New York and has a principal place of business in New Jersey. (Declaration of James Brennan ("Brennan Decl."), ¶ 4.) Meirer does not refute those facts. Under *Daimler*, the Court lacks general jurisdiction over SANA.

Specific jurisdiction over a defendant exists where: (1) the defendant has purposefully directed his or her activities at residents of the forum state or in the forum state itself; (2) the

plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-77 (1985).

Meirer bears the burden on the first two prongs, and if he fails to meet his burden on either prong, "personal jurisdiction is not established in the forum state." *Schwarzenegger*, 374 F.3d at 802 (internal citation omitted). Meirer argues that he has sufficiently alleged facts to show a prima facie case of jurisdiction by asserting that SAS does business in the United States solely through its subsidiary SANA. (Compl. ¶ 6.) Mr. Brennan, SANA's Director of Finance and Human Resources, attests that although SANA is registered to do business in California, it has one employee here and no other connections with California. (Brennan Decl., ¶¶ 6-16.) He also attests that it did not perform any services for SAS in connection with SAS flight 936. (Supplemental Declaration of James Brennan, ¶¶ 8-13.) In response, Meirer submits declarations and pleadings from other courts in an effort to show SANA's connections with this forum. The Court does not view those documents to be inconsistent with SANA's position here. The Court concludes that Meirer fails to sufficiently allege or present facts that would establish a prima facie case of specific jurisdiction.

The Court also declines to exercise its discretion to order jurisdictional discovery. Even considering the information Meirer submits from pleadings in other cases, the Court finds his request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts" to this case. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Accordingly, the Court GRANTS SANA's motion to dismiss for lack of personal jurisdiction. If Meirer can in good faith and in compliance with his obligations under Rule 11 amend to include facts that would demonstrate jurisdiction, the Court will grant leave to amend.

**B.     The Court Dismisses the Claims As Alleged Against SAS, With Leave to Amend.**

SAS argues that Meirer's first two claims must be dismissed because his sole remedy against it is a claim under Article 17 of the Convention for the Unification of Certain Rules for

4

1 International Carriage by Air done at Montreal on May 28, 1999 (the "Montreal Convention").[1]
2 The United States Supreme Court has held that the Warsaw Convention, the predecessor to the
3 Montreal Convention, preempts state law causes of action whether "in contract or tort" and
4 exclusively governs the rights and liabilities of the parties. *See El Al Israel Airlines, Ltd. v. Tseng*,
5 525 U.S. 155, 161 (1999). In reaching that conclusion, the Court noted "[t]he cardinal purpose of
6 the Warsaw Convention … [was] to achieve uniformity of rules governing claims arising from
7 international air transportation." *Id.* at 169 (internal quotations, citations and alterations omitted).

8 Based on that "comprehensive scheme of liability rules[,]" the Court stated it "would be
9 hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, non-
10 uniform liability rules of the individual signatory nations." *Id.* at 171; *cf. Fadhliah v. Société Air
11 France*, 987 F. Supp. 2d 1057, 1063 (C.D. Cal. 2013) (The "purpose behind [Article 29] was to
12 ensure that, in circumstances in which the Convention applied, it was not possible to circumvent
13 its provision by bringing an action for damages in the carriage of passengers … in contract or in
14 tort, or otherwise. Once the Convention applied, its conditions and limits of liability were
15 applicable.") (quoting Int'l Civil Aviation Org., International Conference on Air Law, Vol. 1,
16 1999 Doc. 9775-DC/2, at 235 (1999)).[2] That "preemptive effect on local law … extends no
17 further than the Convention's own substantive scope."[3]

18 Although the Ninth Circuit has not yet addressed whether the Montreal Convention
19 completely preempts state law claims, it has stated the Montreal Convention "provides the
20 *exclusive remedy* for international passengers seeking damages against airline carriers."
21 *Narayanan,* 747 F.3d at 1127 (emphasis added); *see also Smith v. Am. Airlines, Inc.*, No. 09-cv-

---

[1] Meirer has attached a copy of the Montreal Convention to his oppositions to the motions filed by SAS and MedAire. (*See* Dkt. Nos. 23-1, 34-1.)

[2] The *Fadhliah* court addressed the issue of whether the Montreal Convention completely preempted state law claims removed to federal court, and found that it did. That view is not uniform. Although Meirer argues that complete preemption is not at issue here, many, if not all, of the cases on which Meirer relies rest on that doctrine.

[3] "[I]n interpreting the Montreal Convention, court have routinely relied upon Warsaw Convention precedent where the equivalent provision in the Montreal Convention is substantively the same." *Narayanan v. British Airways*, 747 F.3d 1125, 1127 n.2 (9th Cir. 2014).

02903-WHA, 2009 WL 3072449, at *4 (N.D. Cal. Sept. 22, 2009). In *Jensen v. Virgin Atlantic*, on which Meirer relies, the court concluded that the Montreal Convention operated as an affirmative defense and did not completely preempt state law claims for purposes of removal jurisdiction. No. 12-cv-06227-YGR, 2013 WL 1207962, at * (N.D. Cal. Mar. 25, 2013). However, that court also noted that "while the Montreal Convention's exclusivity provision may preempt state laws, claims falling *outside* of its scope may be brought under state law if state law gives rise to a cause of action." 2013 WL 1207962, at *4 (emphasis added).

It is not clear to the Court that Meirer is attempting to plead claims for negligence and strict liability under common law, and SAS may be elevating the form of those claims over their substantive allegations. Indeed, Meirer does not dispute that the Convention for the Unification of Certain Rules for International Carriage by Air done at Montreal on May 28, 1999 (the "Montreal Convention") applies to his claims against SAS. (Compl. ¶¶ 1, 47-49, 63-71, 75, 85; *see also* Dkt. No. 34, Opp. to SAS Mot. at 1 n.1, 3:15-19, 5:25-28.) The Court concludes that the Montreal Convention's exclusivity provision applies to each of Meirer's claims. *See Patel v. Singapore Airlines, Ltd.*, No. 15-cv-4207-FMO, 2017 WL 1078444, at *5 (C.D. Cal. Mar. 21, 2017) ("Because plaintiff's injury occurred onboard SIA's aircraft, her state negligence claim is preempted by the Montreal Convention, …, and she can only prevail by means of an Article 17 claim."); *Smith*, 2009 WL 3072449, at *4 (dismissing state law claims for negligence and concluding that Montreal Conventions provision allowing for cap on liability if defendant can show it was not negligent "does not give plaintiff the right to assert independent state law negligence claims").

Because the Court concludes the Montreal Convention provides the exclusive remedy for those claims and to ensure the record is clear, the Court GRANTS SAS's motion to dismiss the first two claims for relief, and it GRANTS Meirer leave to amend to expressly plead a claim against SAS under Article 17 of the Montreal Convention. If SAS asserts it was not negligent or that the liability caps apply, nothing in this Order shall preclude Meirer from arguing to the contrary. *See, e.g., Smith*, 2009 WL 3072449, at *4.

//

**C.     The Court Grants MedAire's Motion to Dismiss, With Leave to Amend.**

Meirer also asserts a claim for negligence against MedAire. The parties again dispute whether the Montreal Convention preempts Meirer's negligence claim, which Meirer asserts can be raised only as an affirmative defense. In contrast to his claims against SAS, Meirer alleges that the Montreal Convention does not apply to MedAire because it is not a carrier. (Compl. ¶ 65.) The Montreal Convention does not define the term "carrier." It does, however, provide that "[i]f an action is brought against a servant or agent of the carrier arising out of damage to which the Convention relates, such servant or agent, if they prove that they acted within the scope of their employment, shall be entitled to avail themselves of the conditions and limits of liability which the carrier itself is entitled to invoke under this Convention." Montreal Convention, Art. 30.

MedAire argues that courts have extended this protection to independent contractors. Although Meirer argues the Court should not consider the evidence MedAire submitted in connection with its motion, which the Court has not, he has not put forth any authority that would contradict the legal principle that an agent or servant would be entitled to avail itself of the Montreal Convention's protections. The Court assumes for the sake of argument that the Montreal Convention would apply as an affirmative defense to Meirer's claims against MedAire. "[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Although Meirer does not allege that MedAire was SAS's agent, he does allege that "MedAire and SAS acted together and in concert to cause a single result to Mr. Meirer," the harm he allegedly suffered on the flight. (Compl. ¶ 62.) He also alleges that "MedAire had a relationship to provide its purported professional flight operational advice for the benefit of the airline's passengers, including" Meirer. (*Id.* ¶ 96.) The facts describing MedAire's conduct during the flight, as alleged, also support a conclusion that it is entitled to the protections of the Montreal Convention. *Cf. McCaskey v. Cont'l Airlines, Inc.,* 159 F. Supp. 2d 562, 566-67 (S.D. Tex. 2001) (finding MedAire subject to protections of Warsaw Convention where it provided "medical advice, aid[ed] the crew in deciding whether to divert, suggest[ed] appropriate airports

for a diversion when needed, and arrang[ed] necessary medical care at the arrival gate"); *Baillie v. MedAire, Inc.*, No. 14-cv-00420-PHX-SMM, 2015 WL 8139397, at *2 (D. Ariz. Dec. 18, 2015) (concluding Montreal Convention applied to MedAire by virtue of "contractual relationship with British Airways, wherein they agree to provide on-board medical advice and aid in deciding whether to divert flights," because contract exists solely to facilitate British Airways' contracts of carriage).

Accordingly, the Court GRANTS MedAire's motion to dismiss, and it GRANTS Meirer leave to amend to assert a claim that clearly falls outside the scope of the Montreal Convention or to assert a claim against MedAire under the Montreal Convention.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to dismiss, and it GRANTS Plaintiff leave to amend in accordance with the terms of this Order. If Plaintiff chooses to amend, he shall file an amended complaint by February 5, 2021, and Defendants shall answer or otherwise respond by February 26, 2021. The parties shall appear for an initial case management conference on March 26, 2021 at 11:00 a.m.

**IT IS SO ORDERED**.

Dated: January 15, 2021

JEFFREY S. WHITE
United States District Judge